IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PETER HOLLAND, et al.,

    Plaintiffs,

v.

THE RELATED COMPANIES, INC., et al.,

    Defendants.

No. C 15-03220 JSW

**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**

    Now before the Court is the motion for a preliminary injunction filed by plaintiffs Peter and Kristen Holland (collectively referred to as "Plaintiffs"). Having considered the parties' arguments and relevant legal authority, and having had the benefit of oral argument, the Court hereby GRANTS Plaintiffs' motion for preliminary injunction.

    In order to obtain a preliminary injunction, Plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008) (citations omitted). The *Winter* court also noted that because injunctive relief is "an extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*)). Thus, "[i]n each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id.* at 24 (citing *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular

regard for the public consequences in employing the extraordinary remedy of injunction.'" *Id.* (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

Issuing an injunction that alters status quo *pendente lite*, although disfavored, may be issued where "the facts and law clearly favor the moving party." *Stanley v. University of So. Calif.*, 13 F.3d 1313, 1320 (9th Cir. 1994); *see also Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399, 1403, 1405 (9th Cir. 1993) (noting issuance of injunction requiring affirmative action is subject to heightened scrutiny, but still affirming issuance of preliminary mandatory injunction).

The Fair Housing Amendments Act ("FHAA") makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2). The statute "defines discrimination to include a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *City of Edmonds v. Washington State Bldg. Code Council*, 18 F.3d 802, 804 (9th Cir. 1994). The FHAA was intended "protect the right of handicapped persons to live in the residence of their choice in the community" and "imposes an affirmative duty to reasonably accommodate handicapped persons." *Id*. at 806 (42 U.S.C. § 3604(f)(3)(B)).

To establish "a claim of discrimination based on failure to reasonably accommodate, a plaintiff must demonstrate that (1) he suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap 'may be necessary' to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." *Giebeler v. M & B Associates*, 343 F.3d 1143, 1147 (9th Cir. 2003) (citing *United States v. California Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997)).

"The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination." *United States v. California Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1418 (9th Cir. 1994). The Ninth Circuit has made clear that the FHAA's accommodation provisions must be interpreted "with the specific goals of the FHAA in mind: to protect the right of handicapped

1  persons to live in the residence of their choice in the community, and to end the unnecessary
2  exclusion of persons with handicaps from the American mainstream." *Giebeler*, 343 F.3d at 1149
3  (internal quotations and citations omitted). To demonstrate that an accommodation is necessary,
4  Plaintiffs "must show that, but for the accommodation, they likely will be denied an equal
5  opportunity to enjoy the housing of their choice." *Id*. (quoting *Smith & Lee Assocs, Inc. v. City of*
6  *Taylor,* 102 F.3d 781, 795 (6th Cir. 1996). An accommodation is considered "reasonable under the
7  FHAA when it imposes no fundamental alteration in the nature of the program or undue financial or
8  administrative burdens." *Id*. at 1157.

9  Here, the dispute between the parties is actually quite narrow. Defendants do not dispute that
10 Peter Holland has a disability as defined by the statute or that he has a disability-related need to be
11 relocated *during the construction*. Defendants only dispute that the scope of the requested
12 accommodation, to be relocated to another unit at no additional cost to Plaintiffs *for the duration of*
13 *their lease*, is reasonable. At the time that Defendants initially conceded that Peter Holland is
14 disabled and has a disability-related need to be relocated, there was another studio unit available that
15 was farther away from the construction noise and was only $600 a month more than Plaintiff's
16 current rent. Unfortunately, at that time, Defendants were not willing to provide that unit to
17 Plaintiffs at the cost of their current rent. Now Defendants are willing to move Plaintiffs to another
18 unit farther away from the construction noise, at the Defendants' sole cost, and charge Plaintiffs'
19 their current rent. The only unit available is a one bedroom which rents out for close to $2,000 more
20 than Plaintiffs' current rate. Defendants anticipate that the construction will be completed by
21 September 8, 2015. Defendants want to be able to move Plaintiffs back to their original unit, at the
22 Defendants' sole cost, when the construction has been completed.

23 Peter Holland is a combat veteran of the United States Army and suffers from post-traumatic
24 stress disorder ("PTSD"). (Declaration of Peter Holland, ¶ 3.) The construction noise reminds him
25 of gunfire, explosions, and screaming. (*Id*., ¶ 12(1).) Because the construction noise sounds like
26 combat to him, Peter Holland is perpetually on a war footing and reminded of his time in the Army
27 in ways that he would never wish to be. He feels like he is in a war zone, and his brain acts
28 accordingly. (*Id*., ¶ 38.) Given the random and intermittent nature of the construction noise

3

throughout the day, it reminds him of being shot at by enemy forces. (*Id*., ¶ 40.) His PTSD-related nightmares are awful, even when he is not being triggered on a daily basis. (*Id*., ¶ 41.) He is afraid that staying in that triggering environment could do permanent damage to his mental state, and by extension, to his wife and young daughter. He is unclear how long it will take him, or even if he will be able, to return to the mostly functional base line he had before the construction noise began. (*Id*., ¶ 60.)

At the hearing, Plaintiffs' counsel argued that the construction noise, including the randomness of when the noise occurs, has created significant insecurity and stress for Plaintiffs. This insecurity and stress would be exacerbated by moving for a short duration of time with an uncertain end date. Although the construction is scheduled to end by September 8, 2015, it is not yet clear when it will actually be completed. Until that time, Plaintiffs would be living in boxes and waiting to hear that it is time to move back to Unit 7C. If they were giving the certainty of being able to stay in the new apartment through the end of the lease in December, they would be more likely to unpack and settle in to the new space. Moreover, there would be no uncertainty regarding their move date. That would likely give Peter Holland more of a reprieve from his PTSD that was triggered by the construction.

In contrast, the Court finds that the increased financial burden on Defendants for letting Plaintiffs stay in the new apartment through the end of their lease in December, as opposed to staying until the construction ends in September, would be negligible. For every month that Plaintiffs stay in the new apartment but pay their current rent, Defendants will lose $2,000 in revenue. However, if Plaintiffs were to move back to Unit 7C after construction were completed, Defendants would have to keep Unit 7C vacant during the construction period and would lose the fair market rental value for that unit during this time period. Plaintiffs estimate, and Defendants do not contest, that the fair market rental value for Unit 7C is $3,395. (Declaration of Steven L. Derby, ¶ 6.) For the month and a half that Defendants estimate the construction will continue, Defendants would lose approximately $8,100 in rent through the two units and would incur the cost of paying for another move back to Unit 7C. If Plaintiffs were to stay in the new apartment through the end of their lease in December, Defendants would lose approximately $10,000 from the difference between

4

the market rate of the new apartment and the rental rate that Plaintiffs pay over a five month period. However, Defendants would be able to rent out Unit 7C at the market rate.  Therefore, depending on the cost of moving Plaintiffs a second time, the difference in what Defendants agree would be a reasonable accommodation (moving Plaintiffs out of and then back to Unit 7C after the construction is completed), and in what Plaintiffs are requesting (moving out of Unit 7C for the duration of their lease) is likely less that $1,000.  Defendants have not made any effort to show how losing this small amount of rental money in an apartment complex with approximately 450 apartments would be an undue burden.  Moreover, in balancing the equities and considering the harm that Plaintiffs have already suffered, the Court finds that Plaintiffs' need for a genuine reprieve from the construction noise and an opportunity to have a more stable and settled living situation far outweighs any incremental additional cost to Defendants.

Plaintiffs have made a strong showing that the construction noise severely interferes with their ability to use and enjoy the unit they are currently renting.  Defendants do not appear to contest this point and make no effort to rebut it.  Plaintiffs also make a showing, which Defendants do not attempt to rebut, that the cost of relocating Plaintiffs to an alternative unit during the pendency of the construction project is a reasonable accommodation that would not cause an undue financial or administrative burden on Defendants.  The only point that Defendants dispute is whether they should be allowed to move Plaintiffs back to Unit 7C once the construction project has ended.  In light of the facts discussed above, the Court finds that the reasonable accommodation includes allowing Plaintiffs to stay in the new apartment at their current rental rate for the duration of their lease.

Plaintiffs have demonstrated that the law and facts clearly favors them.  *Stanley*, 13 F.3d at 1320. Moreover, Plaintiffs have demonstrated that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest.  *Winter*, 555 U.S. at 20.  Therefore, the Court HEREBY GRANTS the motion for preliminary injunction.  Defendants are HEREBY ORDERED to make a reasonable accommodation to Plaintiffs by moving them to an upper apartment in their building, free of construction noise, for the duration of their lease at their current rental rate.  Plaintiffs may schedule

5

the move at their convenience and Defendants are ORDERED to pay the reasonable costs of such relocation.

Although Federal Rule of Civil Procedure 65(c) generally requires that a successful application for a preliminary injunction post a bond or other security, "[t]he court has discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review." *California ex rel. Van De Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1325 (9th Cir. 1985), *amended on other grounds*, 775 F.2d 998 (9th Cir. 1985); *see also Crowley v. Local No. 82*, 679 F.2d 978, 1000 (1st Cir. 1982) (stating that "in noncommercial cases, the court should consider the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant," and secondly, "in order not to restrict a federal right unduly, the impact that a bond requirement would have on the enforcement of the right should also be considered."). Here, the Court notes that Defendants did not request in their opposition papers that Plaintiffs post a bond. When the Court inquired about a bond at the hearing on the motion for a preliminary injunction, Plaintiffs represented that posting a bond would impose a financial burden on them. In light of the small amount of potential damages that Defendants would incur if the Court wrongfully required Defendants to allow Plaintiffs to stay in the new apartment after the construction ceases and the fact that Plaintiffs are individuals with limited funds, the Court exercises its discretion to dispense with the security requirement.

**IT IS SO ORDERED.**

Dated: July 23, 2015

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE