UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER HOLLAND, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>THE RELATED COMPANIES, INC., et al.,<br><br>    Defendants. | Case No. 15-cv-03220-JSW<br><br>**ORDER GRANTING, IN PART, AND DEFERRING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT AND ORDERING SUPPLEMENTAL BRIEFING**<br><br>Re: Dkt. No. 98 |

Now before the Court for consideration is the motion for partial summary judgment filed by Defendants, Related Management Company L.P. ("RMC") and Third and Mission Associates LLC ("TMA") (collectively "Defendants") on Plaintiffs' third claim for relief and on the issue of punitive damages.[1] The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the motion suitable for disposition without oral argument.[2] *See* N.D. Civ. L.R. 7-1(b). The Court VACATES the hearing schedule for July 22, 2016, and it HEREBY GRANTS, IN PART, Defendants' motion. The Court DEFERS ruling on the issue of whether Plaintiffs are entitled to punitive damages.

---

[1] Defendant The Related Companies, Inc. ("TRCI") also moved for summary judgment on each of Plaintiffs' claims. In their opposition, Plaintiffs concede that TCRI should not be a defendant and state that they will dismiss the claims against TRCI with prejudice. To date, Plaintiffs have not filed a dismissal. Plaintiffs shall file a dismissal of TRCI by July 22, 2016, or the Court shall enter an order granting the motion for summary judgment as unopposed and shall enter judgment in favor TRCI.

[2] Plaintiffs' opposition brief contains footnotes that do not comply with Northern District Civil Local Rule 3-4(c)(2). The Court HEREBY ADVISES all parties that failure to comply with that rule in the future shall result in the Court striking offending pleadings and briefs from the record without further notice.

**BACKGROUND**

The following facts are undisputed, unless otherwise noted. In November 2008, Plaintiffs, Peter Holland ("Mr. Holland") and Kristin Holland ("Mrs. Holland") (collectively "Plaintiffs") leased unit 7C in The Paramount apartment complex ("The Paramount"). In December 2014, Plaintiffs renewed their lease for a period of one year. (*See* First Amended Complaint ("FAC"), ¶¶ 6, 9-10, 12; RMC Amended Answer to FAC ("RMC Answer") ¶¶ 1, 6, 9-10, 12; TMA Amended Answer to FAC ("TMA Answer") ¶¶ 1, 6, 9-10, 12; Declaration of Deborah Lunn in Support of Defendants' Motion for Summary Judgment ("Lunn Decl.") ¶ 3.) The Paramount is a residential apartment complex that is owned by TMA and is operated by RMC. (FAC ¶¶ 6-7; RMC Answer ¶¶ 6-7; TMA Answer ¶¶ 6-7; Declaration of Warren Loy in Support of Defendants' Motion for Summary Judgment, ¶ 2; Lunn Decl., ¶ 2.)

In January 2015, Defendants sent a notice to The Paramount's residents that the building's amenities space, which was located on the floor below Plaintiffs' apartment, would be renovated. That project commenced in March 2015. (RMC Answer ¶¶ 13, 15; TMA Answer ¶¶ 13, 15; Declaration of Connie Cortese in Support of Defendants' Motion for Summary Judgment ("Cortese Decl."), ¶ 2; Lunn Decl., ¶ 5.) Mr. Holland suffers from Post-Traumatic Stress Disorder ("PTSD"). After the renovation began, Mr. Holland raised complaints to Ms. Cortese, Jessie Liete, and Tanya Noeggerath Brown about noise from the construction. He also advised them that the noise was impacting his PTSD. (*See* Lunn Decl., ¶¶ 6, 8 Exs. A-B; Declaration of Joanne Childress in Support of Defendants' Motion for Summary Judgment, ¶¶ 1-2, Exs. A-B; Cortese Decl., ¶ 3, Ex. A; Declaration of Celia McGuinness in Opposition to Defendants' Motion for Summary Judgment, Ex. A (Deposition of Tanya Brown at 84:2-14; McGuinness Decl., Exs. 5-6).) Plaintiffs asked for an accommodation because of the construction noise. The parties engaged in discussions regarding Plaintiffs' request but were unable to reach an agreement.

On July 10, 2015, Plaintiffs filed their complaint and alleged that Defendants' actions violated: (1) the federal Fair Housing Amendments Act, 42 U.S.C. sections 3601, *et seq.* (the "FHAA Claim"); (2) California's Fair Employment and Housing Act, Government Code sections 12926, *et seq.* (the "FEHA Claim"); (3) California's Unruh Civil Rights Act, Civil Code sections

1  51, *et seq.* (the "Unruh Act Claim"); and (4) California's Disabled Persons Act, Civil Code

2  sections 54, *et seq.* (the "CDPA Claim").

3        Plaintiffs also filed a motion for a preliminary injunction with their complaint. (Docket

4  No. 4.) On July 23, 2015, the Court granted Plaintiffs' motion for a preliminary injunction, and it

5  ordered Defendants to "make a reasonable accommodation to Plaintiffs by moving them to an

6  upper apartment in their building, free of construction noise, for the duration of their lease at their

7  current rental rate," and it ordered Defendants to pay "the reasonable costs of such relocation."[3]

8  (Docket No. 31, Order Granting Motion for Preliminary Injunction at 5:25-6:2.) Defendants

9  moved Plaintiffs in compliance with the Court's Order, and Plaintiffs moved out of The

10  Paramount in December 2015. (Lunn Decl., ¶ 3.)

11        The Court shall address additional facts as necessary in the analysis.

## ANALYSIS

### A. Legal Standards Applicable to Motions for Summary Judgment.

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment, or partial summary judgment, is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment

---

[3]   The Court only addressed Plaintiffs' claim for violations of the FHAA.

3

does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party meets its initial burden, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also* Fed. R. Civ. 56(e). In addition, the party seeking to establish a genuine issue of material fact must take care adequately to point a court to the evidence precluding summary judgment. A court is "'not required to comb the record to find some reason to deny a motion for summary judgment.'" *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.     The Court Defers Ruling on the Issue of Punitive Damages.[4]**

Plaintiffs ask that, if the Court does not deny the motion on the issue of punitive damages, that it defer ruling on the issue on the ground that there are outstanding discovery requests that are pertinent to resolution of the motion. On June 27, 2016, Magistrate Judge Laporte issued an order in which she directed the parties to meet and confer to narrow two of Plaintiffs' interrogatories and rejected Defendants' arguments that the interrogatories were not relevant to Plaintiffs' claims or defenses. Judge Laporte specifically addressed the potential relevance of the information to punitive damages. (Docket No. 107, Order re Joint Discovery Letters at 4:12-23.) According to Plaintiffs, the parties have not yet met and conferred on those issues and, thus, they have not received responses to those interrogatories.

---

[4]     Plaintiffs also concede that they are not seeking punitive damages on the Unruh Act and CDPA Claims. Rather, Plaintiffs are seeking treble damages under these statutes. Because the Court grants Defendants' motion on the Unruh Act Claim, Plaintiffs' request for damages on that claim, whether punitive or treble, is now moot.

4

Plaintiffs also purport to recount deposition testimony from Warren Loy to support their argument that Defendants' motion should be denied. (Declaration of Steven L. Derby, ¶¶ 13(e)-(f).) Defendants object to these paragraphs on the basis that they constitute double hearsay and are contradicted by Mr. Loy's deposition testimony. (Docket No. 120, Defendants' Objections to Derby Declaration.) Although Defendants have submitted portions of Mr. Loy's deposition in support of their reply brief, it is not clear whether they have submitted the portions they contend contradict Mr. Derby's declaration.

The Court finds good cause to defer ruling on the issue of punitive damages, and it will permit the parties the opportunity to submit supplemental briefing, evidence, and any objections to the evidence, on this issue once Defendants have responded to the outstanding discovery requests. It also will permit Plaintiffs to submit the portions of Mr. Loy's deposition that they purport to recount in Paragraphs 13(e) and 13(f) of the Derby Declaration.

Because the Defendants are the moving party, they shall submit their supplemental brief by no later than August 5, 2016. Plaintiffs shall respond by August 19, 2016. Defendants shall reply by August 26, 2016. If the Court determines that a hearing is required, the Court shall permit oral argument at the pretrial conference scheduled for September 26, 2016. Otherwise, the Court will resolve the motion on the papers.[5]

## C.   Defendants Are Entitled to Partial Summary Judgment on the Unruh Act Claim.

Defendants argue they are entitled to summary judgment, because the Unruh Act does not apply to requests for reasonable accommodation in residential apartment complexes.[6] The Unruh Act provides, in part, that "all persons within the jurisdiction of this state are free and equal, and no matter what their … disability … are entitled to full and equal accommodations, advantages, facilities, privilege, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). The Unruh Act also provides that a "violation of the right of any individual under

---

[5] **The Court admonishes the parties to review the Court's Guidelines for Trial and Final Pretrial Conferences in Civil Jury Cases, and it draws their attention to paragraph 2(i) in particular.**

[6] Defendants do not dispute that the Unruh Act applies generally to "the business of renting housing accommodations." *Marina Point, Ltd. v. Wolfson*, 30 Cal.3d 721, 731 (1982).

5

the federal Americans with Disabilities Act [ADA]… shall also constitute a violation of this section." *Id.* § 51(f). The addition of Section 51(f) to the Unruh Act was to "'adopt[] the full expanse'" of the ADA. *Lentini v. California Center for the Arts, Escondido*, 370 F.3d 837, 847 (9th Cir. 2004) (quoting *Presta v. Peninsula Corridor Joint Powers Board,* 16 F. Supp. 2d 1134, 1135 (N.D. Cal. 1998)). In *Presta*, the court also stated that the addition of Section 51(f) was intended to make the Unruh Act "co-extensive" with the ADA. *Id.* at 1135 (internal quotations and citations omitted).

The ADA, in turn, provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privilege, advantage or accommodations of any place of public accommodation by an person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The ADA defines discrimination to include "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford … accommodations to individuals with disabilities[.]" *Id.* § 12182(b)(2)(A)(ii). However, courts have held that the ADA's reasonable accommodation provisions do not apply to residential apartment complexes, because they do not fall within the ADA's definition of public accommodation. *See, e.g., Arceneaux v. Marin Housing Authority*, No. 15-cv-00088-MEJ, 2015 WL 3396673, at *7 (N.D. Cal. May 26, 2015) (citing cases); *Independent Housing Services v. Fillmore Center*, 840 F. Supp. 1238, 1344 n.14 (N.D. Cal. 1993); *see also* 42 U.S.C. § 12181(7)(a).

Defendants rely on *Coronado v. Cobblestone Village Community Rentals*, 163 Cal. App. 4th 831 (2008), *overruled on other grounds, Munson v. DelTaco, Inc.*, 46 Cal. 4th 661, 678 (2009).[7] In *Coronado*, the plaintiff, a quadriplegic, was required to use a wheelchair and the sidewalk at his apartment complex ended in a raised curb and did not have a wheel-chair access ramp. The plaintiff argued that this constituted a barrier to access and sued under the Unruh Act, based on an alleged violation of the ADA's access requirement. 163 Cal. App. 4th at 836, 840.

---

[7] In *Munson*, the California Supreme Court held that a plaintiff seeking damages pursuant to the Unruh Act based on alleged violation of the ADA does not have to prove intentional discrimination. 46 Cal. 45th at 678.

6

The trial court granted judgment in the defendant's favor, because it concluded that the residential portion of the apartment complex was not covered by the Unruh Act. The court of appeals affirmed. It acknowledged that the "'business of renting housing accommodations fell within'" the scope of the Unruh Act. *Id.* at 840 (quoting *Marina Point, Ltd. v. Wolfson*, 30 Cal. 3d 721, 731 (1982)). The court reasoned, however, that the residential portions of the apartment complex did not fall within the ADA's definition of a "public accommodation," and, therefore, those portions of the complex "are not subject to compliance with the ADA or federal regulations implementing the ADA." *Id.* at 850; *Cf. Carolyn v. Orange Park Community Ass'n*, 177 Cal. App. 4th 1090, 1098 (2009) ("purely residential areas of a common interest development are not public accommodations" for purposes of Unruh Act claim).

"[W]here there is a multi-use facility in which there is a commercial office open to the general public but also residential and common areas that are not open to the general public, it is appropriate to consider the particular area in question when attempting to determine the applicability of the ADA structural access standards *or other ADA requirements*." *Coronado*, 163 Cal. App. 4th at 851 (emphasis added). Because the portion of the property at issue was a part of the residential apartment complex, the *Coronado* court held that the defendant was not required to install a curb ramp at that location. *Id.* at 850. In sum, because the defendant's conduct did not violate the ADA, there could be no claim under Section 51(f) of the Unruh Act.

The Court has not found any California Supreme Court decision that is directly on point. In *Munson*, the court overruled *Coronado* to the extent that case held that a plaintiff is not required to allege intentional discrimination to establish an Unruh Act violation based on a violation of the ADA. *Munson*, 46 Cal. 4th at 678. However, the court left intact the *Coronado* court's ruling that residential portions of an apartment complex do not fall within the ADA's definition of a public accommodation and, thus, would not support an Unruh Act claim.

Plaintiffs rely on *Flowers v. Prasad* to argue that the court should construe the Unruh Act broadly, such that it would encompass a reasonable accommodation claim on the facts of this case. 238 Cal. App. 4th 930 (2015). In that case, the plaintiff, who was required to use a service dog, alleged that the defendant violated Section 51(f) of the Unruh Act when she denied him service at

1    her restaurant.  The *Flowers* case is distinguishable on its facts, because the establishment at issue

2    was a restaurant.  238 Cal. App. 4th at 934.  Thus, there was no dispute that it fell within the

3    ADA's definition of a place of public accommodation.  *See, e.g.,* 42 U.S.C. 12181(7)(b).

4          Plaintiffs also cite the Court to portions of the Unruh Act's legislative history.  For

5    example, Plaintiffs note that the legislative history stated that the addition of Section 51(f) would

6    "'[m]ake a violation of the ADA a violation of the Unruh Act.  Thereby providing persons injured

7    by a violation of the ADA with the remedies provided by the Unruh Act (e.g., right of private

8    action for damages).'"  *See Munson*, 46 Cal. 4th at 672 (quoting Sen. Judiciary Rep. on Assem.

9    Bill No. 1077, (1991-1992 Reg. Sess.) at p. 5).  This language appears to be a recognition that, in

10   contrast to the Unruh Act, the ADA does not provide for damages.  *See, e.g, Wander v. Kaus*, 304

11   F.3d 856, 858 (9thc Cir. 2002); *Munson,* 46 Cal. 4thg 673 (noting that incorporation of ADA

12   accessibility standards provides a "damages remedy for *any* violation of the ADA's mandate of

13   equal access to *public accommodations*") (first emphasis in original, second emphasis added).  It

14   is therefore consistent with the intent that the amendments to the Unruh Act were intended to

15   "'retain California law when it provides more protection for individuals with disabilities than the

16   [ADA].'"  *Flowers*, 238 Cal. App. 4th at 942 (quoting Stats.1992, ch. 913, § 1, p. 4282.)

17         Absent clear guidance from the California Supreme Court or the Ninth Circuit on this

18   issue, the Court finds the reasoning in *Coronado* persuasive and shall follow it.  Thus, because

19   Plaintiffs sought a reasonable accommodation in connection with areas that are indisputably

20   within the residential portions of The Paramount, they cannot show a violation the ADA and, thus,

21   cannot premise their Unruh Act on that alleged violation.  *See Rodriguez v. Morgan*, No. 09-cv-

22   8939-GW (CWx), 2009 WL 253867, at *1-*3 (C.D. Cal. Jan. 26, 2012) (granting summary

23   judgment in plaintiff's favor on FHAA, FEHA, and CDPA claims based on defendant's failure to

24   permit plaintiff to break lease to accommodate disabilities but granting summary judgment in

25   favor of defendant on Unruh Act claim on same facts); *Smith v. Powdrill*, No. 12-cv-06388 DDP

26   (RZx), 2013 WL 5786586, at *11 (C.D. Cal. Oct. 28, 2013) (granting summary judgment for

27   plaintiff on FHAA, FEHA and CDPA Claims based on defendant's refusal to make exception to

28   no-pets policy in residential lease for service animal but granting judgment in defendant's favor on

United States District Court
Northern District of California

Unruh Act claim on same facts).[8]

Accordingly, Defendants are entitled to judgment in their favor on this claim.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for partial summary judgment on the Unruh Act Claim, and it DEFERS ruling on the issue of punitive damages.

IT IS SO ORDERED.

Dated: July 11, 2016

_____
JEFFREY S. WHITE
United States District Judge

---

[8] The Court in *Southern California Housing Rights Center v. Los Feliz Towers Homeowner's Ass'n* reached a contrary conclusion regarding requests for reasonable accommodations in a housing complex. 426 F. Supp. 2d 1061, 1068 (C.D. Cal. 2008). Although the court referred to the Unruh Act, the provision in cited in support of its conclusion was California Civil Code section 54.1(b), which falls within the CDPA. *See, e.g., Munson*, 46 Cal. 4th at 668 n.5 ("Although this court and others have referred to both section 51 and 52 as the Unruh Civil Rights Act, the statutory label applies more precisely only to section 51[.]").